IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   11-cv-01333-WYD

JEREMY PINSON,

      Applicant,

v.

BLAKE DAVIS,

      Respondent.

---

## ORDER OF DISMISSAL

---

I.  BACKGROUND

Applicant Jeremy Pinson is in the custody of the United States Bureau of Prisons (BOP) and currently is incarcerated at the United States Penitentiary in Florence, Colorado.  The matter before me is Applicant's *pro se* Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Doc. No. 1, in which he asserts three claims, including (1) a denial of due process rights in two different disciplinary proceedings; (2) retaliation for filing a federal action; and (3) a violation of the Administrative Procedures Act (APA).  Previously, I entered an order that denied the retaliation and APA claims and instructed Respondent to address the merits of Applicant's due process claims.

Respondent was directed to show cause why relief should not be granted regarding the two disciplinary proceedings, which he did on November 7, 2011. Applicant filed a Reply on December 12, 2011.  This matter now is ripe for decision.

II.  ANALYSIS

    A.  Standard of Review

In considering Applicant's filings, I am mindful of his *pro se* status, and accordingly, read his pleadings liberally.  *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).  However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve Applicant of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, I will treat Applicant according to the same standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. United States,* 508 U.S. 106, 113 (1993); *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994).

    B.  Due Process in a Disciplinary Proceeding

As a federal prisoner, Applicant has a constitutionally protected liberty interest in his earned, good conduct time.  *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987).  Therefore, he was entitled to due process at the disciplinary hearings in question.  However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Rather, adequate due process at a prison disciplinary hearing requires only that a prisoner be provided with written notice of the charges against him no less than twenty-four hours in advance of the disciplinary hearing, an opportunity to call witnesses and present documentary

2

evidence in his defense if doing so would not be unduly hazardous to institutional safety or correctional goals, and a written statement by the factfinders of the reasons for the decision and the evidence on which they relied.  *See id*. at 563-66; *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990).  There also must be some evidence to support a disciplinary conviction.  *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996).

"Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *See Hill*, 472 U.S. at 455-56; *see also Mitchell*, 80 F.3d at 1445 (citing *Hill*).  The disciplinary decision will be upheld even if the evidence supporting the decision is "meager."  *Mitchell*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457).

Constitutionally adequate due process at a prison disciplinary hearing does not require that an applicant be informed of every detail of the charges against him so that he can prepare what in his opinion is the best defense.  It only requires that the applicant be informed of the charges to enable him to marshal the facts and prepare a defense.  *Wolff*, 418 U.S. at 564.

Applicant asserts that in both Incident Report (IR) Nos. 1826063 and 1878645 he was deprived of a fair and impartial decisionmaker, staff representation, and requested witnesses.  Applicant also contends that he was found guilty without some evidence and was sanctioned to the loss of good conduct time.  Applicant seeks restoration of his

good conduct time and privileges and release from disciplinary segregation status.

C.  Incident Report No. 1826063

Respondent asserts that

[b]ased on the record evidence, [Applicant] was not denied due process. Other than his conclusory statements, [Applicant] has not presented any evidence to call the written record into question.  The record reflects that a hearing on the charges was held; [Applicant] was allowed to call witnesses and testify.  A written report of the factual findings, decision, and sanction was provided to [Applicant].  The undisputed record contains sufficient evidence of the charge of assault.

Resp., Doc. No. 16 at 7.

In his Reply, Applicant concedes that he was given the opportunity to call his cellmate as a witness, but he argues he was denied a request to call the inmate responsible for the incident at issued in IR No. 1826063.  Reply at 2 and 3-4.  Applicant further asserts Respondent offered no evidence beyond the disciplinary records and relied on a memorandum by PA Chippi that was not mentioned in the incident report he received, which prohibited him from marshalling the facts in his defense.  Reply at 4-5. Applicant also asserts that he received a formal notice of the disciplinary hearing only fifteen minutes prior to the hearing, and as a result he was not able to identity the actual assailant and obtain a camera recording of the incident before the hearing.  Reply at 5. Finally, Applicant asserts the DHO confused his cellmate with the inmate who actually started the fire, and based on this confusion the DHO found that because his cellmate had started a fire in their cell he was not a credible witness.  Reply at 6.

4

1.  Denial of Witnesses

Applicant asserts that he was not able to provide a name at the Unit Disciplinary

Committee (UDC) hearing of the inmate who actually assaulted the officer and who

should be called as a witness.  He further contends that because the DHO hearing was

held on the same day as the UDC hearing, and only fifteen minutes after he received

notice, he was not able to obtain the name of the assaulting inmate prior to the DHO

hearing.

Applicant, however, concedes that he received notice of IR No. 1826063 on

February 24, 2009, two days before the UDC and DHO hearings.  He also had a month

subsequent to the incident to learn the name of the inmate located in the cell next to

him.  Furthermore, Applicant is well acquainted with the disciplinary process and that he

is entitled to request witnesses at a hearing.  Also, it is not reasonable that prison staff

should be responsible for determining who an inmate desires to call as a witness.

Finally, Applicant's argument that the inmate in the adjacent cell would provide a

statement that he, rather than Applicant, assaulted the officer is highly speculative.

Applicant states that he now has learned the name of the alleged guilty inmate.

He, however, does not provide specific information on what the inmate would have

stated at the hearing other than to make a general confession that he and not Applicant

assaulted the officer.  *See Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993) (no

due process violation found when plaintiff failed to show how a testimony from a witness

he was not allowed to call would have affected the outcome of his case).  Although

prison officials must consider an inmate's request to call a witness on an individual

5

basis, errors in denying witness testimony are subject to a harmless error review. *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 813 (10th Cir. 2007) (citations omitted). Based on the above findings, the DHO's denial of Applicant's request to allow an unnamed inmate provide a statement at his DHO hearing, or to continue the hearing to identify the responsible inmate, is at best a harmless error. I find no violation of Applicant's due process by the denial.

### 2. Failure to Provide Evidence

Applicant contends that had he known the Chippi memorandum would be used as evidence at the DHO hearing he could have demonstrated it lacked credibility. Reply at 5. He also contends that he would have requested a video surveillance recording to corroborate his argument. *Id.*

As stated above, constitutionally adequate due process only requires that the applicant be informed of the charges to enable him to marshal the facts and prepare a defense. *Wolff*, 418 U.S. at 564. Applicant does not deny that he received an incident report on February 24, 2009, two days prior to the UDC and the DHO hearings. The incident report, prepared by Officer Grimes, states as follows:

> On 1/26/09, at approximately 7:25 a.m., while conducting pill-line with PA Chippi, I/m Pinson Reg. 16267-064 became angry when told he had to wait until after pill-line to see the PA. I/m Pinson then stuck his right arm through the food slot and requested to see the S.H.U. Lieutenant. I/m Pinson then lunged his arm towards my keys but due to my maneuvering, he grabbed my radio instead. I then attempted to deflected [sic] Inmate Pinson's hand off of my radio but the Inmate grabbed my left arm instead. The inmate then began tugging and pulling my arm into the cell through the food slot. After I recovered my arm from the inmate, I began exiting the range and was struck by inmate Pinson in the lower left portion of my back with saliva and a "AA" battery. I continued exiting the range without

retaliation and notified the Lieutenant.

Resp., Doc. No. 16-3 at 4.

Applicant's claim that he was denied due process because the Chippi memorandum was not provided to him, but was listed as documentary evidence in the DHO's report, is without merit.  Applicant contends that if he had access to the Chippi memorandum he would have argued Chippi's statements lacked credibility, because it is impossible for a person to witness an action that occurred behind them.  As set forth above, Officer Grimes includes a statement in his report that Applicant assaulted him in the lower left portion of his back.  Applicant, therefore, had knowledge of Officer Grimes' description of the assault prior to the hearing and was free to counter the allegations with his alleged theory that neither Grimes or Chippi could have seen who assaulted Officer Grimes.  Furthermore, constitutionally adequate due process at a prison disciplinary hearing does not require that an applicant be informed of every detail of the charges against him so that he can prepare what in his opinion is the best defense. *Wolff*, 418 U.S. at 564.

As for Applicant's claim that he was denied sufficient time to request a copy of the video surveillance recording and would have done so had he known about Chippi's statement, the claim also lacks merit.  As stated above, as early as February 24, 2009, Applicant was aware that Officer Grimes' stated he was assaulted from behind by Applicant, but he did not request a review of a video surveillance recording at that time. I find no violation of Applicant's due process rights in the alleged failure by prison staff to provide him with a copy of the Chippi memorandum and a video surveillance

7

recording of the incident.

### 3. Untimely Notification

Applicant contends that BOP regulations require twenty-four hours between a UDC hearing and a DHO hearing, and his rights were violated because the UDC and DHO hearings were held on the same day. "[A] failure to adhere to administrative regulations does not equate to a constitutional violation." *See Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer,* 468 U.S. 183, 194 (1984)). A review of an applicant's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell*, 80 F.3d at 1445; *e.g.*, *Diaz v. McGuire*, 154 F. App'x 81, 84-85 (10th Cir. 2005) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause), *cert. denied,* 546 U.S. 1221 (2006). *Wolff* only requires that Applicant be provided with a notice of the charges against him within twenty-four hours prior to the disciplinary hearing. *Wolff*, 418 U.S. at 563-66. Applicant received notification on February 24, 2009, and the disciplinary hearing was held on February 26, 2009. The *Wolff* requirement was met. Finally, prison regulations are "primarily designed to guide correctional officials in the administration of a prison." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995).

Applicant had a timely notice of the charges against him. Prison staff's decision to hold his disciplinary hearing in less than twenty-hours after the UDC hearing does not violate Applicant's due process rights.

8

4. Lack of Evidence.

Applicant's lack of evidence and false information claims are without merit.  Even if the DHO's reason for finding Applicant's witness less credible than either Grimes or Chippi was done in error, there is some evidence to support the disciplinary conviction.

The DHO is not required to examine the entire record, conduct an independent assessment of a witness's credibility, or weigh the evidence.  The only relevant question is whether there is any evidence in the record that could support the conclusion reached by the DHO.  *See Hill*, 472 U.S. at 455-56; *see also Mitchell*, 80 F.3d at 1445 (citing *Hill*).  Meager evidence will be upheld.  *Mitchell*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457).

Applicant does not assert that Grimes or Chippi purposely lied about the incident.  His only claim is that they could not possibly have seen who threw the batteries and spit on Grimes and know that the inmate in the cell next to him was the assailant.  Applicant's claims are self-serving.  Furthermore, Applicant's witness did not deny Applicant threw the batteries or spit on Grimes.  The witness only stated that he "never saw" Applicant assault the officer.  Grimes' statement and Chippi's statement that Applicant spit on Grimes and threw batteries at him amounts to direct evidence and easily satisfies the some evidence requirement.  *See Mitchell v. Howard*, 419 F. App'x 810, 816 (10th Cir. 2011).

5. Conclusion

Based on the above findings, Applicant fails to assert a violation of his due process rights in the IR No. 1826063 disciplinary hearing.

D.  Incident Report No. 1878645

Respondent asserts that

[b]ased on the record (Exhibit A, ¶¶ 12-17), [Applicant's] due process rights were not violated when he was sanctioned for setting a fire, refusing to obey an order, and assault on a staff member.  [Applicant] was provided a copy of the incident report and notified of the impending hearing before the Unit Disciplinary Committee, [and was] allowed to be present at the hearing and present evidence. The DHO conducted a hearing, provided the [Applicant] a copy of the Notice of Discipline, and notified [him] of his appeal rights.  The undisputed record contains sufficient evidence of the charge of assault.

Resp. at 7.

In his Reply, Applicant argues the DHO denied his request for witnesses and relied on photographic evidence that he did not have the opportunity to view.  Reply at 6-7.  Applicant also asserts that, even though the investigating lieutenant determined there was insufficient evidence to find him guilty of refusing an order and Applicant denied the charges alleged against him, the DHO found him guilty.  Reply at 7. Applicant further contends that he was falsely charged with this disciplinary offense in retaliation for filing a grievance against an officer.  *Id.*

In the Declaration he attached to the Reply, Applicant asserts that on June 9, 2009, he gave Officer Summerfield a grievance for processing.  Reply at 13.  He further contends that Officer Summerfield was upset by the grievance and in retaliation falsely charged him with setting a fire, assault, and refusing orders. *Id.*  Applicant also asserts that he was advised of the charges at the UDC hearing on June 12, 2009, but he did not sign any documents at this hearing.  *Id.*  He also asserts that he appeared at the DHO hearing on June 23, 2009, asked that all inmates housed on the range where he was

located when the alleged fire was set be called as witnesses, but he was denied the

request. *Id.* at 14. Finally Applicant contends that he made no other comment at the

DHO hearing. *Id.*

In an attached exhibit to the Response, there is documentation of a meeting that

Applicant had with Lieutenant Gregory on June 9, 2009, at 6:00 p.m, regarding the

incident in question. *See* Resp., Doc. No. 16-4 at 5. Lieutenant Gregory's report

indicates that Applicant understood his rights and admitted that he spit and threw liquids

from his cell toilet on an officer. *Id.* Applicant also admitted that he started the fire

using his blanket as fuel and that he did this because he was frustrated with prison

administration for not following policy. *Id.* Lieutenant Gregory further indicated that

Applicant did not wish to name any witnesses. *Id.* There also is a document attached

to the Response, *Id.* at 6, that is signed by Applicant and dated June 12, 2009, that

indicates he did not elect staff representation or desire witnesses. Finally, Gregory's

investigative report states that a photograph of the cell fire was attached to the report

along with a copy of the injury assessment of the reporting officer, which supports the

charges of assault and starting a fire. *Id.* at 5.

The DHO found as follows:

> The DHO bases this decision on facts and photographic evidence
> contained within the written report. Specifically, on June 9, 2009, at
> approximately 0745, you prevented staff from securing the food slot on
> your assigned cell door (106) while housed in the special housing unit on
> Z-A-2 range. You refused to allow staff to secure the food slot. During
> this time, you were observed by staff placing a blanket on the opened food
> slot and igniting it. Your actions of setting the fire caused staff to retrieve
> a fire extinguisher and extinguish the fire. During the time when staff were
> trying to extinguish the fire, you threw an unknown liquid substance on

Officer Summerfield.  The liquid hit him in the face, chest, and legs.
Officer Summerfield also observed you spit saliva from your mouth hitting
him in the chest.  You were heard by officer Summerfield stating, "Come
here you bitch, and I will stab your ass."  You then placed your right arm
through the food slot stating, "Come here motherfucker, and I will get ya."

Inmate Pinson admitted to all three charges during the DHO hearing.  By
setting a fire, inmate Pinson placed the safety of staff and other inmates in
jeopardy.  Additionally, by assaulting staff while they were trying to
extinguish the fire, further jeopardized the safety of both staff and other
inmates.  Inmate Pinson's refusing to allow staff to secure the food slot
caused an incident that could have been more serious.  The DHO found
ample evidence to find inmate Pinson guilty of these charges, and
sanctioned him accordingly.

Resp., Doc. No. 16-4 at 2.

    1.  Retaliation

Applicant's retaliation claim is self-serving and unbelievable.  Applicant does not

assert a claim of retaliation in the Application or in the administrative remedy appeal of

IR No. 1878645 that he attached to the Application.  *See* Application at 3 and 13.  He

first asserted a claim of retaliation against Officer Summerfield in his Reply.  I need not

address claims raised for the first time in a reply brief.  *See United States v. Mora*, 293

F.3d 1213, 1216 (10th Cir., 2002) (citing *Codner v. United States*, 17 F.3d 1331, 1332 n.

2 (10th Cir. 1994); *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 724 (10th Cir.

1993)).  I, therefore, find Applicant's retaliation is not only without merit but also appears

to be unexhausted.

    2.  Lack of Evidence

Although Applicant claims he did not admit the charges at the DHO hearing, he,

however, does not deny the meeting with Lieutenant Gregory where he admitted the

12

assault and starting the fire.  In fact, he relies in part on the findings of Lieutenant

Gregory for his argument that even though the investigation officer found no evidence to

support the charge of refusing an order the DHO found him guilty of refusing an order.

Finally, Applicant does not assert that a finding of only assault and starting a fire would

have reduced the amount of good conduct time that he lost.  Even if the DHO was

incorrect in finding Applicant guilty of refusing an order, the finding is no more than a

harmless error.  Sufficient evidence existed to find Applicant guilty of assault and

starting a fire and to impose sanctions.  I, therefore, find Applicant's due process rights

were not violated.

### 3.  Denial of Witnesses

Applicant fails to assert what testimony any witnesses would have given that

would have countered Summerfield's statement and Gregory's statement.  *See*

*Chesson*, 986 F.2d at 366.  Although prison officials must consider an inmate's request

to call a witness on an individual basis, errors in denying witness testimony are subject

to a harmless error review.  *Howard*, 487 F.3d at 813.  Based on the above findings,

denying Applicant the ability to call as witnesses all inmates located in the range where

he was housed at the time of the fire is at best a harmless error.  I find no violation of

Applicant's due process by the denial.

### 4.  Failure to Provide Relied-On Evidence

As for the photograph that was part of the evidence but was not provided to

Applicant, as stated above, constitutionally adequate due process only requires that the

applicant be informed of the charges to enable him to marshal the facts and prepare a

defense.  *Wolff*, 418 U.S. at 564.  Applicant does not deny that he received an incident report on June 12, 2009, and was aware of the charges against him.  I find no violation of his due process rights in that he was not shown a photo of the results of the fire.

> 5.  Conclusion

Based on the above findings, I find Applicant fails to assert a violation of his due process rights in the IR No. 1878645 disciplinary hearing.

III. CONCLUSION

FOR THE FOREGOING REASONS, the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 is **DENIED** and the action is **DISMISSED** with prejudice.

FURTHERMORE, leave to proceed *in forma pauperis* on appeal is **DENIED**.  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order is not taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he must also pay the full $455 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated:  April 25, 2012.

BY THE COURT:


s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE